Goods. Mr. Lesko. May it please the court. My name is Paul Lesko. I'm from the firm of Simmons Cooper and we represent the appellant in this case, Dr. Douglas Ferrago. While our I'm going to highlight three points which I think are exceptionally important. The first point I'd like to raise is that the district court in this case was under the misimpression that our expert did not actually have the accused product in his possession when he opined on infringement and on the doctrine of equivalence. Because of this, this misimpression we believe carried through in the opinion and may have actually tainted the rulings that were there. And how could it not? Because she thought our expert only looked at a copy and not the actual product. It's a potential problem. I thought she was talking about the fact that he only had a photograph of the product. That was a misimpression. He actually had the actual product itself. The photograph was used for his actual opinion was where the sides were, where the surfaces were. But he did actually have the product. He actually had the product. He tested the product. He put it underneath his leg, wore it a couple of times to see how it worked. He actually set it down, drew from it, and measured the angles. So this is not an opinion that he derived solely from a photocopy. It's an opinion he actually derived from the which is very helpful. We appreciate that. We could see whether there was a genuine issue or not as to whether it was quadrilaterally shaped. And I think the claim term is what's necessary is a substantial quadrilateral shape. And the way that comes in is with the product. With the claims, what's emphasized there is that there need to be four surfaces, four work surfaces that are either in specific locations or perform specific functions. And I can emphasize that here. This is the Rawlings product. If you could imagine that this is somebody's thigh. When the thigh is resting on the actual product itself, you can see that this area right here is actually not one surface. It's two surfaces. It performs the function and has a location of two of the claim surfaces, the first and the third periphery surface. The first surface is what is engaging the back of the thigh. Isn't that really a stretch to argue that that is two surfaces? I don't think so because what's required actually by the patent is simply that there's a distinction made between a triangular shape and a shape that has four surfaces. The fourth surface, what it does is it allows for more comfort by actually bringing this area out. So when you have a true triangle, there is no third surface. And that's this area right here. There would be no third surface because it's straight. So the thigh itself would simply rest along the whole surface. Here, by having the thigh rest on the surface, you are actually defining what the third surface actually is, which is a surface that's spaced apart, not touching the back of the knee, spaced apart from the knee, but opposite this surface. And that's really where the focus of the patent is. And that's where we believe infringement comes in. Because if this was a true triangle, it is not as comfortable. It does not have a separate first and third surface. It would only have one first surface. And that's where this comes in. There is no requirement in the patent itself that there be straight lines, simply that there be surfaces. And so long as there are four surfaces, you have the extra comfort. But where would you divide that fourth surface? Where would that division arise? Here, one easy way to find it is with the stitching. The stitching helps emphasize the surface. But again, the easiest way to show where the surface is is by actually putting another pad on it or putting a straight object on it so that you can see this is the first surface. This is the work surface that the thigh actually comes in contact with. And then this is the surface that's spaced apart. There's no definition between those two surfaces. You could say it's a full curvature from the back to the front. As the claims are written, it focuses on the enclosure itself. It doesn't actually focus on the pad, but actually on the enclosure itself. Looking at the pad, the stitching helps define where the first and third surfaces are and show that this is not actually a continuous curve. If you could imagine what a continuous curve would look like, if you would continue this angle up, there's a curve there. But this would be a separate curve here. So by actually adding this curve, you're actually adding an angle. And what's important is if you focus on the substantially quadrilateral claim terminology, this is closer to a quadrilateral than it is to a triangle. Our expert measured the angles. He put the pad on a piece of paper, drew it out, and actually measured the angles. The angles that he came up with was 362 degrees, which is only two degrees away from a quadrilateral. If this was a triangle that only had three surfaces, it would be 180 degrees. So you can see with the angle measurement, this more closely approximates a true quadrilateral with four surfaces than it does a triangle with only three surfaces. Or even if it was a full curvature at that point, it would still be three surfaces. I don't think, as the term surface is utilized in the patent, I don't believe, as long as there's two parts of whatever this area is, as long as you perform the claim function or in the claim location. I'm saying if there was a perfect curve from the beginning, from the front to the back, would that be a two surface or one surface type of thing? I think depending on how it looked, I think it would be a fact question that would need to go to the jury to be determined. But I believe if you had a true surface, if it would actually work on the thigh, hold the thigh up, and the separate surface would be spaced apart from the back of the knee, not touching the knee, but opposite this, I think actually that is something that a jury could find, is literally infringes. You made a very clever comparison between a triangle with 180 degrees and a quadrilateral with 360. And I gather you got from 180 to 360 because you've got the very slightest bend here, which adds almost 180 degrees, doesn't it? I think the very last page of his declaration, he does have where the measurements were performed, and I think that's where the angle comes in. But I think that's why we argue that this is a case that should have gone to the jury. The jury should have been able to deliberate, because reasonable minds may differ as to this. I put forward to you that with our expert's declaration that there really is no, this is actually two separate surfaces on top, the work surface as planned. But that doesn't prove anything. If it were just a curve, the red one would still sit on top of the black one. If it's just a curve, I mean, if we look at a different pad with a different type of curve, I think, again, it would be a fact issue that would need to go to the jury for a determination at that point to see does that curve actually. The focus is on the four surfaces. Are there four work surfaces, and is there a separate surface? Because you would not have that in a triangle. With the true triangle, it would be just a thigh there, and there would not be the separate surface, so it would not have the extra comfort that would be required. The second point that I wanted to raise has to do with, in this case, I think it can be decided mainly in the procedure, especially when we focus on the doctrine of equivalence. We submitted evidence in the form of a declaration of our expert who opined on literal infringement and doctrine of equivalence. After you had stopped on doctrine of equivalence, you cut back from, what, greater than three, at least three to four? Right. And polygonal to quadrilateral? Substantial. Didn't you give up what you are trying to argue now? According to our, as you can see from the expert declaration, and I can show you an example here, this is from page 10 of the Apolli's brief. And this is what they are arguing is the true surface of what's at issue here. And this is what our expert did. If you take the surface and just use a straight ruler and line it up, you draw one line there. I don't think you answered my question, though. Didn't you cut back your claims, thereby surrendering what you are trying to argue for now? I think the argument that we actually had was not cutting back. We were really cutting back from a true triangular shape. We still claim substantially quadrilateral. So we went from polygonal to substantially quadrilateral. So there is some play with quadrilateral. Now, we went from at least three surfaces to four surfaces. But here, I think what the focus is on is the term surface is used in the claim. And the claim is not necessarily using the word surface to describe because, you know, planet Earth has a surface of the Earth, but there are separate surfaces on the surface. The specification allows, I think it's in column two lines, starting column two, line 35, indicates that the surface of the pad itself can comprise multiple surfaces. So what we are arguing here is simply that although someone can say that this is an entire pad, this isn't only one surface, it actually is two surfaces because there is still this work surface and a separate work surface. In other words, you walk outside this court, you look around and it looks as though the Earth is flat, but it's not. But I think in this instance, though, the term surface is reutilized in our claim. It's focusing on, are there four work surfaces? Are there surfaces that work in the same positions as there are? And so long as it falls within those limitations, that's it. I mean, Rawlings had a roadmap. They could have had a true triangular pad, but for whatever reason, they decided they didn't want a true triangular pad. Let's go with something else. At the end of your rebuttal time, would you like to say the rest of it? If I could just make one more quick point. This is a picture of their pad. If you draw two straight lines on it, and this is what our expert did, you can see that this pad from the center view very much closely approximates something that is substantially quadrilateral, and it emphasizes where the four surfaces are. And I think this right here, and what's important here, is because this was decided on summary judgment, we think it was something that needed to go to the jury. And I think, just looking at this picture right here, reasonable minds may disagree. You're repeating yourself. I'd like to reserve the rest of my time. Thank you. Ms. Wunderlich? May it please the Court? I'm Sandy Wunderlich, and I represent Rawlings Sporting Goods in this case. I think that one of the best evidence in this case that there is no infringement is the actual cross-section of the product, the Rawlings product. We provided that to the Court. I'm showing it to you now. You can see it is not substantially quadrilaterally shaped. It does not have four sides, and it is not generally polyhedron. Well, isn't there a break there? Isn't there a break? No. This is one continuous curve. If you put this on a… You're saying even if there is a break, it's still one side because it's curved. It's one side. You know, he was claiming his expert found that it matched the degrees of quadrilateral at four angles. He has to make up an angle in order to get there. That's just a made-up thing. I even asked his expert in his deposition, how do you get there? He couldn't point to any treatise that would justify drawing these lines and considering it an angle. He has to make it up. Why do you need a treatise? Can't you just look at it? I think you can look at this and make a decision that there's no angle there. That's right. That's my point. Where you're holding your fingers with that break right there, is that a break which could be considered a different surface at that point? You mean right here? Right there. I don't think so. I think it's a continuous curve. You know, I think the point is you have… We're talking about the inside, though. We're talking about just the outside containing. Well, actually, I think that you have to read the patent claims as a whole, and it talks about the shape of the enclosure. It doesn't make any sense unless the enclosure is filled because it doesn't have a shape. But I could fill it with paper, newspapers. Well, it actually requires foam, open-cell foam, closed-cell foam, and it actually specifies what's supposed to be in it. Right, and it's the shape as it's filled. And what would that shape at that point be? That would be the shape that would be formed by the containing cloth, right? Right. You fill the containing cloth. At that point, would that be a break? Well, I don't think so because it says the cross-section. It's not the side view that he wants you to look at, the seam. He wants to focus on the seam, and the seam can be misleading if that's all you're looking at. And he put this pad on a photocopy machine, and that's the picture that he's been using, that his expert has been using. But the reality is you have to look at the cross-section. That's what it says in the patent. You have to look at all of the terms. And this is the cross-section, the center of it. And you can see it's a continuous curve. But the cross-section is formed by the container, right? Without the container, there would be no cross-section to look at. Right, it's the shape, that's true. The shape itself. As it's filled. So at that point, if you look at it, you could see a break at that particular angle. I don't. It's all in the eye of the beholder. Right. You know, I don't think you can see a break. I think it's one continuous curve. If you were to draw this, I think it would, you know, I think it's a continuous curve. I mean, I think that that's exactly what the judge thought as well. And there isn't a fourth surface here. It is a curve. And, you know, I think the other important thing to look at is there were three main parts of this claim. It has to be generally polyhedron. And certainly polyhedron suggests straight lines. It doesn't suggest curves. A substantially quadrilateral cross-section. This does not have four sides, and it's not straight. A quadrilateral also has straight lines. That's another element. There's nothing suggesting that curves were part of this patent claim. Nothing. Of course, he used the word substantially. That's one of his arguments. Right. And, you know, this court has determined that substantially means essentially. That it's still, you can't vitiate the claim of quadrilateral. It's a very specific mathematical term. It means a four-sided figure made of straight lines. And if you were to allow something like this with a major curved surface and only three sides to qualify as a substantial quadrilateral, then you vitiated the term quadrilateral. He originally had polygonal, however you want to say it, and he got rid of that. The doctrine of equivalence as a matter of law prevents him from claiming that this is an equivalent. Because he gave that up during prosecution in order to get this patent. The examiner said, you know, this is anticipated by Meng Shou, you know, I'm not going to let you have this patent. It was rejected. And he came in and he changed it. Polygonal, he changed to quadrilateral very specifically. And he even, you know, at least three sides became four sides. I mean, it's very specific and you would vitiate those terms if you allowed this to qualify. And he has done nothing to rebut the presumption of prosecution history estoppel. He didn't even address it. And as a matter of law, this court can find that prosecution history estoppel prevents him from using the doctrine of equivalence to get where he wants to go. And he keeps saying that what he gave up was only a true triangle. But I would submit to you the original claims said generally polyhedron, substantially polygonal, and at least three sides. And if that was only a true triangle, then why isn't this only a true quadrilateral? He can't have it both ways. He is reading them inconsistently. I would also just point out that the court, that when they did their claim construction, she took into account the need to balance these softening modifiers with these specific mathematical terms. She allowed for some deviation from those specific mathematical terms because it's a soft enclosure. It's got padding in it. It's not going to have exact corners. But nonetheless, it has to at least retain some of the features of those very precise mathematical terms. And that's what she was balancing. And we think she properly construed that. And we think it was absolutely proper that she found that we were entitled to summary judgment. He wants to rely upon his expert. But like I said, his expert had to make up an angle to get there. And she found that it was conclusory. He doesn't address the doctrine of equivalence. And he even acknowledged in his deposition when I asked him, I showed him the cross-section. And he said, you know, it doesn't look particularly quadrilateral. He admitted that. So the judge rejected that because it just wasn't evidence. You can't come in with a conclusory expert declaration and try to avoid summary judgment or there would be no summary judgment in a patent case. Because you can always find somebody who's going to sign a declaration. And it contradicted everything the judge could see with her eyes. Was she her own witness at that point? I'm sorry? Was she her own witness at that point? No, I don't believe so. Was it simple enough for a judge to be able to make that determination? I think so. I think she, you know, her determination was there was no infringement here, either literally or under the doctrine of equivalence. But she states it in her opinion, doesn't she? Yeah, she says that there's no infringement here because there's not four periphery surfaces. As she observed. Correct. And she had a right to do it, just like this court. This is de novo review, and this court has the right to look at this and make its own determination. And, you know, I think summary judgment is appropriate here. If you look at these claims together, this is not a generally polyhedron. This is a major curved surface. And a polyhedron requires straight lines. Everything about his specification, all of the figures he included have straight lines. There was never a suggestion of a curve. It doesn't say anything about rounded or curved. And people have to be able to rely upon the claims as they're stated. They have to be able to count on that. And even if you don't believe that he gave this up because of the prosecution history estoppel, you have to look at the all limitations rule. You have to read the whole claim, and you can't get rid of quadrilateral, polyhedron, and at least four periphery surfaces. You have to make sure it's all there. And she found that there was an element missing, and we agree with her. At least one. We think all three of those are missing. You know, the standard of review is that there has to be no genuine issue of material fact. I mean, you know, you asked whether the judge had become a witness. The key is whether there is a genuine issue of material fact, and we don't believe there is here. We think that you can look at this pad and see that it does not meet the elements of this claim. Does anybody have any other questions for me? Okay, I would submit that our brief covers all the rest of the issues. Thank you. Thank you. Mr. Lesko? I just have a brief rebuttal. The statement by Rawlings that our expert's declaration was conclusory, especially when it was focused on the doctrinal equivalence. Before you, that's not accurate. Paragraph 62 through 75 of his declaration walks through the doctrinal equivalence. For each claim element that was in that issue, he did the function, way, result analysis for each one of those. And I think that leads to why this case can be decided simply on the procedure. We came forward with evidence as to the function, way, result, as we were required to under the AquaTax holding, indicating that if summary judgment of non-infringement is being moved against, the patent owner needs to come forward with evidence on the function, way, result. In response, Rawlings did not come forward with any expert testimony, coming back to rebut that presumption. In fact, they didn't even argue that our function, way, result analysis wasn't correct. Instead, they were trying to rely on prosecution history estoppel, a legal doctrine. And I think here the record is clear that when it comes to the prosecution history estoppel, it doesn't apply here because the focus was on are there four surfaces that perform the claim functions. And here, that's what you have. Also, the argument that this is one continuous curve. Again, there's no evidence of record as to whether this is one continuous curve. The only evidence of record we have is our expert declaration for literal infringement, who looked at the pad itself, including the enclosure, which would include the stitching, and he made his measurements from there. From his measurements, he came with a 362-degree measurement. This would be fall for literal infringement. And Rawlings did not have any angle measurements. They're just putting forward that— How did he get 352? 62. 62. What were the three components? There's four. Four components. And I think it's the way that it was measured. He continued a straight line for each one of these angles, and then he measured them. Now, if there's a problem with that procedure— One of the angles is up the top, right? Correct. One of the angles is at the bottom. Yes. The third angle is at the point of the triangle, the problem expression. Right. Where is the fourth angle? The fourth angle is right here. This is where he measured it. And that is how many degrees? I believe it was— Just short of 180, probably. It was large. That's correct. But, again, when it came to an angle measurement of 362 degrees, the claim construction for substantially quadrilateral said that it could be substantially four-sided or actually have an angle measurement close to 360 degrees. We submitted evidence on this claim element. They did not submit any evidence on this claim element. And if they're challenging the way that he did his measurement, I think that's something that would need to be addressed by the jury itself. That would not be something that would be proper for the judge to actually determine. And I believe that covers all the points that I wanted to make. And we think in this case, due to the way that it is, procedurally summary judgment in our favor should have been granted, but at a minimum it should have gone to a jury. Thank you very much. Thank you. Case is submitted.